# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN ALLEMAND,

       Plaintiff,

vs.                                                  No. CIV-06-0858 WJ/WDS

CITY OF LAS VEGAS,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's ("City's") Motion for Summary Judgment, filed September 17, 2007 **(Doc. 37)**.  Having considered the parties' briefs and the applicable law,  I find that Defendant's Motion for Summary Judgment is well-taken and shall be granted.

In this case, Plaintiff sues his employer for placing him on leave without pay until his license was reinstated following his arrest and conviction for aggravated DWI[1] in 2004.  The gist of Plaintiff's complaint is that Defendant did not grant his request to be transferred to a position which would not require a driver's license, even though Defendant had allowed such arrangements for other employees with DWI convictions.

The complaint alleges breach of contract (Count I); breach of implied covenant of good faith and fair dealing (Count II); discrimination under Title VII based on national origin (Count III); violations of the Equal Protection Clause under the Fourteenth Amendment (Count IV); violations of substantive and procedural Due Process under the Fourteenth Amendment (Count

---

[1] Plaintiff refers to a charge of Driving While Intoxicated as "DUI."

V); and Prima Facie Tort (Count VI).

Defendant filed a summary judgment on September 17, 2007, seeking dismissal on all of Plaintiff's claims. Following Defendant's filing of a motion for sanctions on October 2, 2007, Plaintiff filed his response to the motion for summary judgment, stipulating to the dismissal of all of his claims except for the Equal Protection claim, brought under a "class of one" theory. Defendant's reply addresses Plaintiff's claim under a "class of one" theory, and thus I consider briefing on this issue to be complete.[2]

## Factual Background

The salient facts underlying this lawsuit are undisputed. Plaintiff, a Hispanic male, was employed by the City of Las Vegas in the Utilities Department as a water laborer. He was arrested for DWI at the end of August, 2004. Pursuant to that arrest, Plaintiff's drivers license was revoked for a period of one year, from October 2004 to October of the following year, when his license could be reinstated.

Plaintiff's job description at the time required that he have a valid New Mexico driver's license. Ex. 2.[3] At the time of Plaintiff's license revocation, the City had an administrative policy that called for employees to be placed on suspension without pay for any period of time that they lost their license pursuant to a DWI. Ex. 3, at 2. The policy required that any such employee complete substance abuse counseling during that suspension, and it also permitted

---

[2] Because Plaintiff has stipulated to dismissal of his other claims, Defendant's motion regarding these other claims need not be considered.

[3] Defendant's exhibits are numbered. Plaintiff's exhibits are lettered.

employees to return to work upon reinstatement of their license.[4]  Plaintiff understood that this policy applied to those who lost their license due to DWI, including him.  The same policy requires that an employee report a DWI arrest on the first work day after the arrest.[5]  Failure to do so could result in termination. Ex. 3.

 Plaintiff does not dispute the policy requirements, but nevertheless states in his response to Defendant's Statement of Material Fact (SMF) Number 5 that he properly reported his DWI because he self-reported the arrest in August, 2004.  This responsive statement is blatantly contradicted by Plaintiff's own testimony that he did not report the arrest to any supervisor for at least 10 days after the arrest:

 Q. So it was about a week and a half after your DWI?

 A. That I let them know, yes.

 Q. Who did you talk to?

 A. It was Mike Espinosa.

 Q. No. I mean which supervisor?

 A. George Montano.  And then after him comes Daniels, Daniel, and then Richard [Trujillo].  I mean Mike Cousins and then Richard.

Ex. 1 at 84-84.  Plaintiff even admits in his deposition that he did not meet the policy's requirement that an employee immediately inform his department director after receiving a DWI citation:

---

[4] In the event the employee's driver's license is *not* restored by the end of the one year period, the employee is terminated. Ex. 3, at 2.  Further, if the employee's license was revoked while driving a City-owned vehicle during work hours, the employee is terminated.  Ex. 3, at 2.

[5] The policy requires that "[a]ny City employee who receives a citation for Driving While Intoxicated shall, immediately or by 5:00 o'clock PM of the first working day following receipt of such citation, report the same to his Department Director. . . ." Ex. 3.

3

> Q. . . . So we know from your testimony that you did not meet that requirement, correct?
>
> A. No.
>
> Q. No, you did not?
>
> A. I did not meet that requirement.

Ex. 1 at 87-88.

Plaintiff received at least three notices from the City that he would be placed on long-term suspension pursuant to policy. Exs. 4, 7, 8 and 36. He had an opportunity to discuss his suspension with his supervisors and tell his side of the story before the suspension was imposed. Ex. 1 at 35.

Plaintiff was a union member at the time of his DWI, suspension and alleged request for a transfer. The grievance and appeal process of the collective bargaining agreement requires that a member file within ten days any complaint regarding alleged unfair practices or misapplications of the collective bargaining agreement. Plaintiff admits that he did not file a timely complaint, but blames his union representative at the time for not going forward with the grievance as Plaintiff had requested. Ex. 1 at 31, 38-39, 49. Plaintiff stated he tried to file a grievance "later on," but submits no evidence that he either submitted a written complaint of any kind or ever appealed the suspension. Ex. 1, 35-39.[6]

The City has a policy that permits employees to seek voluntary transfers. Ex. 6. That policy states that employees must submit the request in writing. The decision to grant voluntary transfers is discretionary and depends on, among other issues, budget provision and open

---

[6] Whether Plaintiff filed an appeal of the disciplinary action taken is relevant to his breach of contract claims, which have been dismissed by Plaintiff's stipulation. However, the paucity of evidence provided by Plaintiff on a general level is noteworthy.

employment positions. Ex. 6.  Plaintiff understood that the City had discretion to grant or deny transfers. Exhibit 1, pg. 56-57.  Plaintiff stated that the union "did the paperwork" concerning his written request for transfer in December of 2004, but has no copies of documents showing that he ever submitted a transfer request in writing.  Ex. 1, 47-48.  Plaintiff was not aware whether there were actually openings for hire at the time.  Ex. 1, 54-55.  He did not file a grievance or any appeal regarding the alleged wrongful denial of transfer.  Exhibit 1, pg. 49.

      Defendant's position is that Plaintiff never applied for a transfer.  Richard Trujillo was in charge of the City's Water Department during the time Plaintiff was arrested and convicted of DWI, and was the person through whom transfer requests would be made.  Mr. Trujillo stated that he met with Plaintiff after Plaintiff was placed on leave, but that Plaintiff never requested a transfer during that meeting.  Ex. 8, ¶¶ 10-11.  He also stated that even if Plaintiff had applied for a transfer, there were no open positions that he would have considered for him at that time.  Ex. 8, ¶ 13.  Further, Defendant makes no apology for following its policy to the letter, in light of the City's position "that it needs to send a clear message to employees about the unacceptable nature of DWI."  Ex. 8, ¶ 9.

      Plaintiff disputes that the City followed its policy with regard to placing him on leave pursuant to his DWI and loss of license.  Again, Plaintiff's responsive statement to a material fact presented by Defendant is inconsistent with Plaintiff's sworn testimony at his deposition, where Plaintiff concedes that his suspension following his DWI conviction followed City policy:

> Q.    So as far as you can tell, according to this policy, it went like clockwork, it went exactly as it said?
>
> A.    Yes, it did.

Ex. 1 at 29-30:25, 1-7.  At the time of his deposition, Plaintiff had access to all the information

necessary to answer this inquiry accurately, and thus the Court accepts Plaintiff's deposition statement as consistent with Defendant's statement of material facts. See, e.g., Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986) (in deciding whether an affidavit that contradicts deposition testimony is an attempt to create a sham issue of fact, the relevant factors are "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain").

Plaintiff attended a DWI program during his work suspension. Ex. C. In October, 2005, after his one-year suspension ended and upon submitting to his employer proof of his reinstated driver's license, Plaintiff returned to his former position in the City's Water Department. Ex. 1 at 29.

## Discussion

Plaintiff concedes that the City followed its disciplinary policy in disciplining him suspending him for the year during which his driver's license was revoked. He does not allege that Defendant followed this policy for others, but not for him. Also, he admits that he was allowed to return to the same job when the suspension ended. Plaintiff's sole complaint is that he was treated differently from other employees who had DWI convictions in that these other employees were allowed to transfer to positions that did not require driving.

## I.     Legal Standards

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The opposing "party may not rest upon the mere allegations and denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the evidence is "significantly probative" such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248-50.  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  In ruling on a motion for summary judgment, a Court does not weigh the evidence or make credibility determinations, see Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1175 (10th Cir. 2001), but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  See Worrell v. Henry, 219 F.3d 1197,1204 (10th Cir. 2000).

   A defendant seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted).  The plaintiff must then "identify specific facts that show the existence of a genuine issue of material facts . . . in specific, factual form for a jury to return a verdict in that party's favor."  Id. (citation and internal quotation marks omitted).

   According to Plaintiff's responsive pleading, the complaint has been narrowed and limited to an Equal Protection claim under the Fourteenth Amendment based on a "class of one"

7

theory.  To allege a claim under this theory, a plaintiff does not need to be a member of a protected class or show that a fundamental right is implicated.  See <u>Bartell v. Aurora Pub. Sch.</u>, 263 F.3d 1143, 1148-49 (10th Cir. 2001) (Equal Protection affords protection to an individual injured by intentional or purposeful discrimination without identification of a class).  A plaintiff may bring an equal protection claim as a "class of one" by proving that he was "singled out for persecution due to some animosity . . . wholly unrelated to any legitimate state activity." <u>Mimics, Inc. v. Village of Angelfire</u>, 394 F.3d 836, 848-49 (10th Cir. 2004); <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (plaintiff alleging "class of one" claim must show that defendant intentionally treated him differently from others similarly situated and that there is no rational basis for the difference in treatment).

Under the equal protection theory urged by Plaintiff, he must prove that he was singled out for persecution due to some animosity on the part of the City.  To do so, he must show that the City's action in suspending him for the year and failing to transfer him (assuming he requested the transfer, although there is no evidence he did so) was done out of spite and for reasons having no rational basis.  As with any equal protection claim, Plaintiff must also demonstrate that he was treated "differently than another who is similarly situated." <u>Bartell v. Aurora Public Schools</u>, 263 F.3d 1143, 1149 (10th Cir. 2001) (citing <u>City of Cleburne v. Cleburne Living Ctr</u>., 473 U.S. 432, 439 (1985)); <u>see also</u> <u>Zeigler v. Jackson</u>, 638 F.2d 776, 779 (5th Cir.1981) ("[T]he essence of the equal protection requirement is that the state treat all those similarly situated similarly").  Plaintiff's equal protection claim fails on both elements.

## II.     Plaintiff is Not Similarly Situated

The requirement that a plaintiff show that similarly situated persons were treated differently "is especially important in class-of-one cases." <u>Jicarilla Apache Nation v. Rio Arriba County</u>, 440 F.3d 1202, 1212 C.A.10 (N.M.),2006. Plaintiffs must demonstrate similarity "in all

8

material respects," and "cannot prevail if there is any material difference between it and allegedly similarly situated parties that relates to a governmental interest." Id. at 1212-13 .

In this case, the City's policy of suspending the employee without pay for a year is specifically contingent on the employee's license being suspended or revoked as a consequence of a DWI conviction. Under that policy, a DWI citation without revocation or suspension of a driver's license requires only that the employee notify his department supervisor of the citation, but does not result in leave without pay. Ex. 3, at 1-2. Thus, Plaintiff needs to show two things in order to be viewed as similarly situated to the employees to which he compares himself. First, he must show that the licenses of these other employees were revoked or suspended, and second, that these employees were either permitted to continue working at their jobs or given transfers.

Plaintiff claims he is aware of nine individuals whom he claims were permitted to continue working even though they had lost their driver's license. Ex. 10[7]; Resp. to Deft's SUMF Number 4. This list was generated as one of Plaintiff's responses to discovery requests by Defendant. However, there is no evidence to back up these averments. Plaintiff offers the affidavit of an investigator, Albert Mares, to show that some City employees who received DWI infractions were allowed to either keep their jobs or transfer to another position that did not require driving. Ex. A. Even with these investigative findings, Plaintiff fails to show that these named employees had their driver's licenses revoked or suspended, much less that other employees with revoked or suspended licenses were given transfers to other positions. There is no indication from Mr. Mares' report that any of these employees either requested or received transfers.

Plaintiff states that Frank Romero, Rick Griego, Angelo Alires, John Vigil and "Mr.

---

[7] Defendant's Exhibit 10 is the same as Plaintiff's Exhibit B.

Trrango" [sic], were all allowed to keep working despite DWI citations. Ex. B (Response to Interrogatory No. 8). However, the City's policy requiring suspension without pay does not apply to a DWI citation where there is no license revocation or suspension. Thus, Plaintiff's contentions cannot possibly be useful in his "class of one" claim because there is no evidence that these individuals are similarly situated to him in having had their licenses revoked or suspended.[8] It gets worse. Moreover, according to Mr. Mares' investigation, which was done at Plaintiff's behest, there was no record or indication of DWI citations "or any adverse driving history" for *either* Mr. Romero, Mr. Griego, or Mr. Alirez. Ex. B. Mr. Mares stated that there was "insufficient information" to run a record check on Mr. Tarango, other than Mr. Tarango having gotten in some trouble and "abandoned his job." Ex. B, at 2.

Plaintiff includes four other individuals within the category of similarly situated individuals: Michael Kolby, Kathy Fisher, Juan Marrujo, and Steve Montano. Mr. Mares' investigation revealed nothing on Mr. Kolby, except to note that a "Michael Colb" retired from the City in 2006, and that there was no indication that he had received a DWI. Ms. Fisher was found to have a history of DWI, but there is no way to determine whether this DWI history was reported to the City, or whether her driver's license was revoked or suspended.

Mr. Marrujo also had a history of DWI, but either left or was terminated from the City over three years ago. Again, there is no evidence that his license was suspended or revoked. With regard to Steve Montano, despite Plaintiff's claims that Mr. Montano was transferred and allowed to continue working, Mr. Mares states that Mr. Montano was placed on administrative leave without pay for six months to a year before being reinstated to his position in the Fire

---

[8] Perhaps the lack of evidence is due to the fact that Plaintiff never deposed any of the employees who he now alleges is similarly situated to him, as Defendant suggests. Reply at 4, n.1.

10

Department. If that was the case (and Plaintiff offers not a scintilla of evidence to refute the findings of his own investigator), then the disciplinary action taken by the City toward Mr. Montano was consistent with City policy, and consistent with the same actions taken against Plaintiff.

Even if Plaintiff could demonstrate that these employees had lost their licenses, he would still have to offer evidence that, unlike him, they were allowed to continue working or that they requested and were given a transfer. Plaintiff offers no evidence that any of these named employees requested and obtained a transfer – other than Plaintiff's unsupported assertions. As an example, Plaintiff was asked during deposition about Kathy Fisher[9] one of the employees he listed as similarly situated, but treated differently:

> Q. Do you know if [Ms. Fisher] ever had her license revoked?
>
> A. Not that I know. But I would say they have to have been revoked for DWI.
>
> Q. But you don't know that it was?
>
> A. Not that I know.
>
> Q. Do you know anything about Ms. Fisher's particular personnel situation, like her disciplinary history?
>
> A. No.
>
> Q. Do you know if Ms. Fisher was ever placed on leave?
>
> A. No.
>
> Q. Do you know if Ms. Fisher ever sought a transfer?
>
> A. I believe she might have. Well, her job was secretarial. So I believe she -- you know, she didn't need to have that valid driver's license to be in the office. But either way she needs to have a valid driver's license to work for the city no matter if you're a secretary or a mechanic or any other position.

---

[9] Defendant refers to Ms. Fisher as "Cathy Fisher."

11

>Q. My question to you was do you know if she applied for a transfer?
>
>A. No, not that I know.

Ex. 12, at 67.

Thus, Plaintiff fails to present evidence that he is similarly situated to any of the listed employees on the most critical characteristics required for a "class in one" claim. In addition, there are other factors that make it impossible for Plaintiff to show that he is similarly situated to these other employees. The job description for Plaintiff's position as water laborer describes driving on the job as "an occasional but essential requirement of the job." Ex. 3, at 3. Statements by Plaintiff's own witnesses underscore the importance of being able to drive during the workday in order to pick up equipment and parts. Ex. 13, at 7; Ex. 14, at 14, Ex. 15, at 20-21. However, none of the individuals listed in Mr. Mares' investigative findings as having convictions for DWI were water department laborers. Plaintiff initially listed Angelo Alirez as a worker in the Water Department, claiming that Mr. Alirez was allowed to transfer to another position which did not require a valid driver's license. Ex. B. However, based on the findings of Plaintiff's own investigator, it turned out that there was no indication that Mr. Alirez had any record of a DWI or other adverse driving history.

Thus, for the nine other "similarly situated" employees who Plaintiff claims were treated more favorably than he, half of them were found to have no record of a DWI arrest or conviction. For all nine, there is no evidence at all that any of them had their drivers' licenses revoked or suspended. Also for all nine, there is no indication that any of them requested a transfer, or that any of them were given a transfer to another position.[10] It is undisputed that transfers are discretionary, and thus the decision to transfer would rest on the discretion of an

---

[10] Mr. Mares' findings included eight employees, and contained no information on Mr. Vigil.

12

employee's supervisor.  Only one of the nine employees listed by Plaintiff – Angelo Alirez – was employed by the Water Department.  However, the findings of Plaintiff's own investigator indicate that Mr. Alirez had no record of a DWI arrest or conviction.  As a result, Plaintiff has offered not a shred of evidence (nor is any found within the record) that any of these individuals were similarly situated Plaintiff sufficiently to sustain an Equal Protection class of one claim.

### III.     No Evidence of Malice or Spite.

In addition to showing that he was treated differently from other employees who were similarly situated, Plaintiff must also show that Defendant acted out of spite or ill will.  Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th Cir. 2004) (an equal protection claim based on a class-of-one theory requires proof that the defendant "bore [some] particular ill will or malice" against plaintiff).  In other words, Plaintiff must offer some evidence that Defendant suspended him for a year without pay, and denied him a transfer (again, assuming a request was made) without a rational basis for doing so.  Plaintiff's response to Defendant's summary judgment is devoid of evidence which would create a triable issue with regard to such intent.

In a "class of one" claim, it is "imperative for the . . . plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class."  Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir.2004).  Plaintiff concedes that he was disciplined according to City policy, and fully expected the consequences of having his driver's license revoked:

> Q.     . . . Is it fair that. . . when your license would be revoked, that you knew that you were going to be going on long-term suspension in October?
>
> A.     Yes, I figured I was going to go on a long-term suspension.

Ex. 1, at 181:10-17.  Spite or ill will cannot be inferred from the fact that the City followed policy in Plaintiff's instance.[11]

Far from suggesting any ill will directed toward Plaintiff, the evidence indicates that the City demonstrated considerable tolerance toward Plaintiff – perhaps more than was justified under the circumstances.  Plaintiff does not dispute that he could have been terminated for his failure to report his DWI arrest on the first work day after the arrest.  SUMF Number 5; Ex. 4 at 4.[12]  Also, Plaintiff admitted that his job application to the City failed to provide information about his two previous DWI convictions.  Ex. 11; Ex. 1, at 23-24.  Given Plaintiff's particular situation, a decision by the City not to transfer Plaintiff (again, assuming Plaintiff requested a transfer, and that a position was open) cannot possibly infer animosity toward Plaintiff by his employer.

Perhaps most telling are Plaintiff's own statements that he did not believe anyone at the City intended to target him specifically:

> Q. Okay. Fair enough. Do you have any reason to believe that anyone at the city intended to harm you specifically?
>
> A. No, I don't know no one.
>
> Q. Sitting here today you don't have any reason to believe that they were targeting you?
>
> A. I don't think so, because I know another person that's going to be coming and give testimony also, his name is Juan Rubio. . .

---

[11] In fact, the Tenth Circuit has declined to hold that the Equal Protection Clause is violated even where an otherwise legitimate disciplinary policy is applied out of malice or bad intent.  Bartell, 263 F.3d at 1148.

[12] Plaintiff attempts to dispute the fact that he failed to report the DWI arrest as required, but as discussed previously, Plaintiff's responsive assertion is not only unsupported by any evidence, but is directly contradictory to his own deposition statement.

Ex. 12, at 91.

Thus, by Plaintiff's own admission, no one at the City intended to harm him, and therefore he fails to meet that requirement of a "class of one" claim. It becomes clear that Plaintiff brought this lawsuit not because he felt he was being specifically targeted (as required for a "class of one" claim), but because he perceived that others were receiving benefits that he was not. I agree with Defendants that this is a far cry from demonstrating "sheer malice" by the City. Bartell, 263 F.3d at 1149.

**IV.  Legitimate State Activity or Rational Basis for City's Action**

Under a "class of one" theory, a plaintiff must show that the defendant "deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." Hilton v. Wheeling, 209 F.3d 1005, 1008 (7th Cir.2000).

Plaintiff offers nothing to suggest that suspending him from work without pay according to policy, and not transferring him to another position during that time, did not have a rational basis. The City's policy regarding employees who received DWI convictions and license revocations addressed the "increase in City employees involved in driving while intoxicated." The impetus for issuing this policy was the City's concern over liability and a statewide public awareness of the issue. Ex. 3. Plaintiff does not – and cannot – take issue with Defendant's interest in sending a clear message to its employees about the unacceptable nature of DWI convictions. As a result, Plaintiff fails at this last element of a "class of one" claim.

**Conclusion**

An important function of summary judgment is to eliminate factually unsupported claims. Celotex Corp., 477 U.S. at 323-24. Plaintiff as the nonmovant may not rest upon his

15

pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff was required to show two elements to establish a violation of the equal protection clause on a "class-of-one" theory: (a) that the Defendant acted with discriminatory intent and (b) that Defendant treated Plaintiff differently from others who were similarly situated without a rational basis for doing so. Plaintiff has not presented any facts which would create a triable issue regarding whether he was similarly situated to any other employee who had his driver's license revoked or suspended, and yet was allowed to transfer to another position. Nor has Plaintiff shown any evidence that would lead a reasonable juror to find that Defendant acted out of spite, malice or with intent to harm Plaintiff.

Finally, Plaintiff cannot refute Defendant's actions toward him as arising from anything other than its legitimate concern over City employees involved in DWI incidents. In sum, Plaintiff has not presented one iota of evidence with regard to any of the elements within his "class of one" equal protection claim. I conclude that Defendant is entitled to summary judgment on this claim. Because Plaintiff has stipulated to the dismissal of his other claims, the disposition of the equal protection claim disposes of all of Plaintiff's claims against Defendant.

**IT IS THEREFORE ORDERED** that Defendant's ("City's") Motion for Summary Judgment (**Doc. 37**) is hereby GRANTED for reasons set forth in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that although the granting of Defendant's Motion for Summary Judgment disposes of all of Plaintiff's claims in this lawsuit, the Court shall retain jurisdiction to consider Defendant's pending Motion for Rule 11 Sanctions (Doc. 41).

UNITED STATES DISTRICT JUDGE