IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN ALLEMAND,

    Plaintiff,

vs.                                                                                          No. CIV-06-0858 WJ/WDS

CITY OF LAS VEGAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR RULE 11 SANCTIONS

THIS MATTER comes before the Court upon Defendant's Motion for Rule 11 Sanctions, filed October 2, 2007 **(Doc. 41)**. Initially, oral argument was set for this motion, but was vacated due to Plaintiff's counsel's inability to attend the hearing.[1] Counsel were offered the opportunity to request another hearing date by a certain time, which has come and gone. Doc. 60.[2] The Court entered summary judgment for Defendant's on the parties' briefs. Doc. 62. Having reviewed the parties' briefs and applicable law regarding Defendant's Motion for Rule 11 Sanctions, this Court rules in favor of Defendant on its Motion for Rule 11 Sanctions.

In the underlying case, Plaintiff sued his employer for placing him on leave without pay until his license was reinstated following his arrest and conviction for aggravated DWI in 2004. The tenor of Plaintiff's complaint is that Defendant did not grant his request to be transferred to a position which would not require a driver's license, even though Defendant had allegedly

---

[1] The morning of the sanctions hearing, Mr. Vigil's secretary called the Court's office to leave word that Mr. Vigil would not be attending the hearing because he had spent all night at the hospital emergency room with his girlfriend.

[2] Mr. Vigil's secretary called the Court and stated that Mr. Vigil wanted oral argument on the Motion for Sanctions. No request in writing signed by Mr. Vigil was ever made.

allowed such arrangements for other employees with DWI convictions.

Defendant seeks Rule 11 sanctions on the grounds that Plaintiff's counsel, Mr. Gilbert Vigil, failed to conduct a reasonable investigation into asserted claims of national origin discrimination, breach of contract, due process and equal protection; and that Mr. Vigil continued to maintain and litigate frivolous claims unsupported by evidence even after being advised that Defendant intended to file the Rule 11 motion.

Plaintiff's counsel was on notice regarding a possible Rule 11 motion in late August 2007.  On September 10, 2007, Defendant provided Mr. Vigil with a copy of the proposed Rule 11 motion, which Defendant represented would be filed after the 21-day "safe harbor" period. Defendant filed its summary judgment motion on October 17, 2007, and the Rule 11 motion at the end of the "safe harbor" period, on October 2, 2007.

Plaintiff's counsel did not react to the specter of Rule 11 sanctions until responding to Defendant's motion for summary judgment.  In that response, Plaintiff stipulated to dismissal of all claims except the Equal Protection claim under a "class of one" theory.  However, by that time, Defendant's counsel was forced to research and file a motion for summary judgment on all of Plaintiff's claims plus the additional attorney time expended in preparing and filing the sanctions.

**I.      Legal Standard**

Rule 11 of the Federal Rules of Civil Procedure requires an attorney or unrepresented party in a civil case to certify that any paper he submits to the court is not presented for any improper purpose; contains claims that are either warranted by existing law or by an argument for a change in the law; and makes factual allegations that have or are likely to have evidentiary support. Fed.R.Civ.P. 11(b). It permits the court, subject to certain conditions, to

sanction violators. Fed.R.Civ.P. 11(c). Trierweiler v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1540 (10th Cir. 1996).[3] These representations cover not only the complaint, but any "pleading, written motion, and other paper. . . ." Fed.R.Civ.P. 11(a).

Under Rule 11(c), the Court may impose sanctions. "[I]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

**II.    Merits of Plaintiff's Claims Asserted in the Complaint**

The complaint alleges, in addition to violations of the Equal Protection Clause under the Fourteenth Amendment in Count IV: breach of contract (Count I); breach of implied covenant of good faith and fair dealing (Count II); discrimination under Title VII based on national origin (Count III); violations of substantive and procedural Due Process under the Fourteenth Amendment (Count V); and Prima Facie Tort (Count VI).[4]

My review of Plaintiff's claims as they existed before the stipulation of partial dismissal leads to the conclusion that Rule 11 sanctions are in order.[5]

---

[3] Specifically, Rule 11(b) states that, signing a complaint, an attorney represents to the Court that: " . . . the claims, defenses and other legal contentions . . . are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; or that ". . . the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

[4] The Court excludes this claim from its analysis since neither the motion for summary judgment nor the motion for sanctions discusses prima facie tort.

[5] The Court's granting of summary judgment concerned only the one remaining claim of Equal Protection under a "class of one" theory, since Plaintiff had agreed to the dismissal of the other claims.

A.   Discrimination Claims based on National Origin

Claims of discrimination based on national original in general require a showing that (a) the plaintiff belongs to a protected class; (b) that he suffered an adverse employment action; and (c) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000).

Plaintiff claimed that the City discriminated against him on the basis of his national origin when it placed him on long-term suspension and did not transfer him to another position that did not require him to drive. Discrimination claims of this kind are usually based on circumstantial evidence, but Plaintiff offered *no* evidence of any kind to support this claim.

Plaintiff did not dispute that transfer requests were required to be submitted in writing, and that the decision to grant voluntary transfers was discretionary and depended on budget provisions and open employment positions. Plaintiff also claimed he understood that the City had discretion to grant or deny transfers. However, Plaintiff offered no evidence, other than his own testimony, that he submitted a written request for a transfer. He testified that he had no idea whether there was a position open at the time he was interested in obtaining a transfer. See, Doc. 62 at 3-4.

Not only did Plaintiff fail to offer any evidence which could infer discrimination based on national origin, but Plaintiff himself stated at his deposition that he did not believe he was discriminated against because of his national origin. Ex. 1 at 58-59, Mot. for Rule 11 Sanctions. Moreover, Plaintiff's *own* witnesses who were identified during discovery, testified that they were not aware of any discrimination toward Plaintiff. Ex. 2, Mot. for Rule 11 Sanctions (various witnesses). A reasonable inquiry into this claim, if done, would have alerted counsel that voluntary dismissal of this claim was proper, at least by the time Defendant advised

4

Plaintiff's counsel about potential Rule 11 consequences.

B.  Contract-Related Claims

This claim should not have been asserted. Even the most superficial inquiry would have shown that Plaintiff had no written contract of employment. Such an inquiry should have also alerted Mr. Vigil to the fact that there could be no "breach" of any expectation of a transfer, where the policy states that transfers are entirely discretionary if and when a position is open. Plaintiff never disputed these facts concerning the transfer policy.

Finally, even if the City's policy could be considered a contract, Plaintiff himself doomed any possibility of a contract claim when he admitted that the written policy manual (or "contract") was *followed* in his individual situation. Sum.J. Mem.Brf., Ex. 1:28-30. Again, if Mr. Vigil had properly questioned his own client, he would have – and should have – known not to proceed on this claim. Ex. 1:28-30. Yet Mr. Vigil continued to assert this claim even after Plaintiff's deposition, through the end of discovery, and even after being advised by Defendant's counsel that there were solid grounds for a Rule 11 motion.

C.  Due Process Claims

Assuming due process was owed to Plaintiff on a employment-based property right,[6] alleged violations of due process are barred by Plaintiff's own admissions. Plaintiff testified in his deposition that he received at least three letters from the City before the City implemented the long-term work suspension pursuant to City policy; he admitted that he had an opportunity to discuss the situation with his supervisors and human resources to tell his side of the story; and

---

[6] An individual must posses a protected interest or property right in order to trigger the protection of due process under the Constitution. See, Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

also admitted that it was someone from the City who was trying to help him find a way to keep his license. Sum.J.Mem.Brf., Ex. 1: 35. Plaintiff continued to allege violations of due process even while conceding that he never appealed or grieved the suspension, as required in his union's collective bargaining agreement. A reasonable interview of the Plaintiff should have alerted Mr. Vigil not to proceed on this claim.

D.      Equal Protection Claim

In his response to Defendant's motion for summary judgment, Plaintiff conceded dismissal of all except this one claim. The Court's analysis of Plaintiff's Equal Protection "class of one" claim concludes that Plaintiff failed to present evidence on any of the required elements of this claim. (Doc. 62). The Court will recapitulate the findings in that Memorandum Opinion within a Rule 11 context.

Plaintiff was required to show two elements to establish a violation of the equal protection clause on a "class-of-one" theory: (a) that the Defendant acted with discriminatory intent and (b) that Defendant treated Plaintiff differently from others who were similarly situated without a rational basis for doing so situated." Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir. 2001). Plaintiff's class of one claim rested entirely on a list of nine employees who Plaintiff claims had their driver's licenses revoked or suspended while working for the City, but were allowed to transfer to other positions which did not require driving. This list is from Plaintiff's response to an interrogatory, and was attached as Defendant's Ex. 10 (or Plaintiff's Ex. B) to Defendant's summary judgment motion. The interrogatory was propounded by Defendant based on the allegations made by Plaintiff in paragraph 14 in the complaint. The interrogatory requested information on Plaintiff's allegation that other employees were allowed to transfer to other positions that did not require driving.

In the interrogatory response, Plaintiff listed nine employees who allegedly had DWI convictions, and who were allowed to either keep their position or were transferred to another position. The information on this list was based on Plaintiff's information and belief, but is not supported by any evidence. Mr. Vigil conducted no discovery on this claim. He did not take depositions of *any* of these employees.[7] He did not interview any witnesses who might have knowledge of their work histories, such as someone from the human resources or personnel departments. He never requested the production of any personnel files, or the production of other documents which surely would have led Mr. Vigil to realize that there was no evidence to support Plaintiff's claims.

Plaintiff's sole discovery for this claim appears to have been hiring Albert Mares, a private investigator, *after* the deadline for discovery had passed, to conduct an inquiry into the nine other employees who purportedly were similarly situated to Plaintiff and who were all transferred to non-driving positions.[8] Mr. Mares' findings with regard to the list of nine employees resulted in nothing material, and only highlights the inadequacy of Mr. Vigil's inquiry into his client's claims. Four of the nine individuals who Plaintiff alleged had DWI's actually had *no* record of any DWI arrest or conviction. Mr. Mares' investigation resulted in no evidence that any of the nine individuals ever had their drivers' licenses revoked or suspended, which would have triggered the City's policy of work suspension as well as a finding that these

---

[7] Mr. Vigil's failure to depose anyone was not from any lack of time – the discovery deadline was extended twice, at Plaintiff's request (Docs. 19 and 26). Defendant refused to agree to yet a third discovery extension. See, Ex. 9 to Mot. for Rule 11 Sanctions.

[8] Mr. Mares, submitted his report to Plaintiff on October 4, 2007. Not only was this outside the final discovery deadline (August 24, 2007), but the report was provided to Plaintiff's counsel two days *after* Defendant filed its motion for sanctions.

employees were indeed similarly situated to Plaintiff.

Plaintiff claims that these employees who supposedly lost their licenses while working for the City were allowed to transfer to other positions that did not require driving, and that such transfers were "common practice and custom." Resp.to Sum.J. at 2.  However, there is no evidence in the record, including Mr. Mares' report, that any of these employees either requested or received transfers.  Since transfers are discretionary under City policy, such decisions would be left to an employee's supervisor.  Only one of the nine listed employees worked in the Water Department, and thus might have had the same supervisor as did Plaintiff.  However, that employee had no history of a DWI arrest of conviction, much less a history of revocation or suspension of his driver's license.

Nonetheless, Mr. Vigil continued to pursue this claim based solely on the information provided in his client's interrogatory response, despite being advised in late August that Defendant believed the claim to be frivolous and subject to Rule 11 sanctions.

E.      Mischaracterization of Defendant's Facts in Equal Protection Claim

As if sensing that evidence of an Equal Protection violation is nonexistent, Plaintiff's counsel at times simply ignored statements of undisputed facts in Defendant's summary judgment motion.  For example, in his responses to Defendants Statements of Undisputed Facts 5 through 10, Plaintiff refuses to admit that he did not properly report his DWI to his supervisors as required under the policy – even though Plaintiff admitted he did not properly report the DWI in his deposition.  In his response to Defendant's Statement of Undisputed Fact 18, Plaintiff disputes that the City properly followed policy in his situation, even though Plaintiff expressly stated in his deposition that the City did follow the policy.  Doc. 62, pages 3 and 14.

**III. Whether sanctions are warranted.**

Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. White v. Gen'l Motors Corp., 908 F.2d 675, 683 (10th Cir. 1990).

I find that such sanctions are warranted in this situation. The arguments raised by Mr. Vigil in protestation of Rule 11 sanctions are in themselves frivolous. Incredibly, Mr. Vigil argues that Plaintiff's claims are not frivolous because of the nine "similarly situated" employees he identified in his response to interrogatories, and Mr. Mares' report – both of which the Court has found to be abysmally lacking in evidentiary value, except to cut against any inference of discrimination or ill will on Defendant's part. Mr. Vigil also argues that Plaintiff's claims cannot be frivolous because Defendant did not file Rule 11 sanctions until the close of discovery. He contends that he has brought forth sufficient evidence and notes that the fact that Plaintiff rejected an offer of settlement by Defendant shows that his claims do have merit.

These arguments are bogus. Whether a defendant proceeds to discovery has little to do with whether a claim is frivolous. A defendant is forced to defend even frivolous claims, including engaging in discovery and settlement discussions if for no other reason than to bring a case to a quick resolution.[9] An offer of settlement has no bearing on the merits of claims, and the Court views the suggestion otherwise as a weak attempt to shift the focus from Plaintiff's

---

[9] Not surprisingly, Defendant states that a small offer of settlement was made so the Plaintiff would "go away" in order to avoid escalating the costs of defending the lawsuit. Reply to Mot. for Sanctions, at 9. Defendant acknowledges the inadmissibility of settlement offers under Fed.R.Evid. 408, except to underscore here the underlying principle behind the rule: that there is nothing relevant about the validity of claims that can be gleaned from offers of settlement.

counsel's own deficiencies regarding his conduct as Plaintiff's counsel in this case.

Plaintiff's counsel claims that Defendant is misusing Rule 11 to gain an inappropriate advantage, since Plaintiff has already offered to dismiss all claims except one (the "class of one" Equal Protection claim).  This carries no weight at all in a Rule 11 context.  Mr. Vigil knew since August 2007 that Defendant believed solid grounds existed for Rule 11 sanctions if the lawsuit was not immediately dismissed.  He was served a copy of the Rule 11 motion in early September 2007, and was warned the motion would be filed at the end of the "safe harbor" period.  Yet Mr. Vigil pressed on with this case.

During that time, Defendant expended time and money doing discovery, as well as researching and preparing briefs on all of Plaintiff's claims. The fact that Mr. Vigil stipulated to partial dismissal at the eleventh hour does not protect him from Rule 11 sanctions.  See, Kurkowski v. Volcker, 819 F.2d 201, 203 (8th Cir.1987) (holding that a district court had jurisdiction to impose Rule 11 sanctions on plaintiffs after voluntary dismissal without prejudice under Rule 41(a)(2)); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990) (voluntary dismissal does not expunge the Rule 11 violation); Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 987), cert. dism'd, 485 U.S. 901 (1988) (violation of Rule 11 is complete when the paper is filed).  Further, allowing a plaintiff to escape sanctions by virtue of his amenability to dismissal after a Rule 11 motion is filed would undercut the deterrence goal of Rule 11, because sanctionable parties would be able to avoid any consequences by simply dropping their claims at the last minute to circumvent the rule.

Mr. Vigil claims he relied on reasonable representations of his client, and conducted inquiry reasonable under the circumstances.  Neither is true.  This lawsuit should not have been initiated or pursued in the first place.  Defendant points out that Mr. Vigil has been representing

Plaintiff since February of 2006 when Plaintiff filed a claim with the Human Resource Division ("HRD").  He is familiar with his client's claims and assertions, and had ample time in which to determine if any of the claims were valid – particularly since the HRD gave a "no cause" determination.  See, Deft's Ex. 10 to Mot. for Sanctions.  Regardless of what Plaintiff relayed to Mr. Vigil at the outset of the case, Mr. Vigil remains responsible for filings with the Court even after the Complaint was filed.  Rule 11(b) includes representations to the Court by "signing, filing, submitting, or later advocating. . . ." a pleading, written motion or other paper."

As noted above, Mr. Vigil has conducted little or no discovery.  Even with regard to the one claim that Mr. Vigil did not dismiss, he deposed no witnesses, including the nine employees who, even now, he maintains are similarly situated to Plaintiff but were treated more favorably. He conducted no interviews and made no efforts to obtain documents or other materials in the course of investigating this case which were relevant to establishing whether these employees actually were "similarly situated" and were actually treated more favorably.  He failed to conduct a reasonable inquiry into his own client's representations which would have made clear that there was no basis for any of the discrimination, contract, or due process claims. At the very least, this inquiry would have revealed that the lawsuit should have been abandoned after it was initiated.  Instead, Plaintiff's counsel dug his heels into the ground and forged on with all of Plaintiff's claims even after being notified by Defendant that it was considering Rule 11 sanctions.

**IV.	Conclusion**

The Court finds that Plaintiff's counsel violated Rule 11 by failing to properly and adequately investigate the factual basis of the allegations asserted in the allegations, and continued to maintain claims which a reasonable investigation would have revealed were

frivolous. Accordingly, the Court concludes that substantial sanctions are appropriate. Under Fed.R.Civ.P. 11(c), sanctions may include non-monetary sanctions, penalties paid to the Court, or reasonable attorney fees and costs. Given that Mr. Vigil's conduct forced Defendant through considerable time and expense in the litigation of this case thus far, the Court will impose sanctions in the form of a reasonable amount of Defendant's attorney fees and costs.

Defendant proposes several options as sanctions in the reply. One option suggested by Defendant finds favor with the Court: that the Court impose costs and fees from the date that Defendant warned Mr. Vigil in writing that Defendant was considering Rule 11 sanctions. Defendant represents this amount to be $18,997.51. Because no affidavits or time sheets have been filed in connection with this amount, Defendant is hereby required to submit an affidavit of costs and fees within ten (10) days representing the costs and fees incurred from August 23, 2007 (the date that Defendant warned Plaintiff in writing about Rule 11 sanctions) to the completion of briefing for both the motion for summary judgment and the motion for Rule 11 sanctions. Thereafter, Mr. Vigil will have ten (10) additional days within which to object to the costs and fees claimed.[10] If no objections are received or, alternatively, if objections are received and overruled, the Court will enter an order awarding costs and fees as the Court deems appropriate.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Rule 11 Sanctions (**Doc. 41**) is hereby GRANTED for reasons set forth in this Memorandum Opinion and Order;

---

[10] If Mr. Vigil intends to object to the reasonableness of the costs and fees claimed by Defendant, then the Court recommends that Mr. Vigil actually file a timely objection as opposed to Mr. Vigil having his secretary call the Court's office leaving a message regarding his intentions.

**IT IS FURTHER ORDERED** that Defendant shall submit documentation to support its requested fees, and Plaintiff's counsel may object to same, as specified in this Order.

_____
UNITED STATES DISTRICT JUDGE